UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT J. VAZQUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>JETBLUE AIRWAYS CORPORATION,<br><br>Defendant. | Civ. No. **15-cv-02587-NRB**<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**(Trial by Jury Demanded)** |

On behalf of himself and all others similarly situated, Plaintiff Robert J. Vazquez ("Plaintiff" or "Mr. Vazquez"), by and through his attorneys, the Law Office of Adam G. Singer and Francis & Mailman, P.C., respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") brought on behalf of applicants for employment with Defendant JetBlue Airways Corporation ("JetBlue").

2. Plaintiff contends that Defendant systematically violates section 1681b(b)(2) of the FCRA by requiring job applicants to sign a standardized background check application form which, among other things, requires job applicants to expressly or impliedly waive certain rights, by agreeing that all employment decisions, including hiring, firing or promotion, are based upon allegedly legitimate and non-discretionary reasons, and by including many other limitations, clauses and extraneous language that is not permitted by the FCRA's stand-alone disclosure form requirement.

3. The FCRA is a remedial consumer protection statute which regulates "consumer reports," including employment background reports such as the ones used in this case. Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as JetBlue. This action involves Defendant's systematic violations of those important rules.

4. Plaintiff was denied employment as a flight instructor at JetBlue in October 2014 based upon a standardized background consumer report conducted by Sterling Infosystems, Inc. ("Sterling"), pursuant to an agreement between Sterling and JetBlue whereby Sterling performs background screening on Defendant's candidates for hire or promotion.

5. In violation of the FCRA, Defendant required Plaintiff to sign a background check application form which did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i), but instead unlawfully attempted to obtain future protection for Defendant for any unlawful or discriminatory actions, and which provided other limitations of consumer and other extraneous eye-straining language.

6. In further violation of the FCRA, Defendant failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide to Plaintiff a copy of the incomplete and misleading background report it obtained from Sterling, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3)(A).

7. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and a class of similarly situated employment applicants who were required to sign Defendant's background check application form that violated FCRA section 1681b(b)(2).

8. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself individually for Defendant's failure to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## PARTIES

9. Plaintiff is an adult individual residing in Hebron, Kentucky.

10. Defendant JetBlue is an airline company licensed to do business in the State of New York, has substantial contacts in this District, and has a principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101.  Defendant JetBlue markets itself as "dedicated to bringing humanity back to air travel."  http://www.jetblue.com/flying-on-jetblue/.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.

12. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Defendant "resides" in this District as defined in 28 U.S.C. § 1391(c).

## STATEMENT OF FACTS

**Background:  Defendant's Use of Sterling's Background Screening Reports**

13. Sterling is among the largest of the nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.

14. Sterling investigates and reviews public records and private databases and assembles and/or maintains consumer files which contain information concerning, among other things, the alleged criminal, credit and employment history of individuals.

15.     From its files, Sterling sells background consumer reports to potential employers (such as Defendant) wishing to screen applicants for employment.  According to its website, Sterling "is the world's largest company focused entirely on background checks." http://www.sterlingbackcheck.com/About /Company-Profile.aspx.

16.     JetBlue uses Sterling's screening services to conduct background checks on applicants for employment.  The background reports resulting from these services are delivered directly to JetBlue.

17.     Under the FCRA, a "user" of a consumer report, such as JetBlue, may not lawfully obtain any background consumer report on any prospective job applicant, or "consumer" as used in the FCRA, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis supplied).

18.     The purpose of the stand-alone disclosure is to inform the consumer job applicant that a background report will be procured about him or her, not to provide the employer an opportunity to obtain the prospective employee's signature on a form filled with confusing language and self-serving protections for the employer or waivers of the employee's rights.

19.     Further, a "user" of a consumer report, such as JetBlue, who intends to take any "adverse action" against a job applicant "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer job applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A).

20. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the consumer job applicant that he or she is about to experience an adverse action, such as a rejection, based on a report's contents, and to provide him or her an opportunity to challenge the accuracy, completeness or relevancy of the information with the consumer reporting agency or the user *before* that job prospect or job is lost.

**The Facts Pertaining to Class Representative Plaintiff Robert J. Vazquez**

21. Plaintiff Robert J. Vazquez applied for employment with JetBlue as a flight instructor on or about June 30, 2014.

22. Mr. Vazquez interviewed in person for the position on or about August 22, 2014 with JetBlue.

23. Following the interview, Mr. Vazquez was offered the job on or about September 2, 2014, which he accepted.

24. In connection with the onboarding process, Mr. Vazquez was required by Defendant to electronically sign a "background check application form" provided by JetBlue which gave Defendant permission, among other things, to obtain a background consumer report about Plaintiff from Sterling.

25. Plaintiff signed the background check application form on September 3, 2014 by electronic signature, as required by Defendant, and advised JetBlue via email at 11:46 a.m. on September 3, 2014 "I just finished the online background check application."

26. Defendant's background check application is a 10-page form document that consists of a consent to obtain a background consumer report and many questions about the

applicant's employment history, education, and other qualifications, as well as various acknowledgements, waivers and other superfluous information.

27. The complete background check application form is attached hereto as Exhibit A.

28. The complete background check application form contains a single signature line for the applicant to sign at the very end.  See Exhibit A at pg. 10 of 10.

29. The "consent" portion of the background check application form (pg. 6-7 of 10) requires the applicant to expressly or impliedly waive certain rights, including the right to a non-discriminatory hiring process, by acknowledging that "all employment decisions are based on legitimate non-discriminatory reasons."

30.  The "consent" portion of the background check application form also requires the applicant to notify Defendant within five days of the background report that he or she is challenging the accuracy of the report with Sterling.  No such timing requirement actually exists under the FCRA, which gives consumer reporting agencies such as Sterling 30-45 days, depending on the circumstances, to reinvestigate any disputed file information, and allows consumers to dispute whenever they discover any inaccurate or incomplete information in their files, without any time limitations.

31. Additionally, the background check application form contains numerous other sections and clauses that are unrelated to the fact that Defendant would be obtaining a consumer report about Mr. Vazquez and his consent to do only that.

32. Even the consent portion of the background check application form contains numerous other clauses that are unrelated to the fact that Defendant would be obtaining a consumer report about Mr. Vazquez and his consent to do only that.

33.     The background check application form appears to be one provided by Sterling to some of its customers.

34.     Indeed, a virtually identical document was found to form the basis for a violation of FCRA section 1681b(b)(2) in a recent decision in the Southern District of New York:

> Notwithstanding Defendants' arguments to the contrary, the Sterling Disclosure [used by the employer] does not appear to be a standalone disclosure. In addition to the disclosure and an authorization, which is permitted, the Sterling Disclosure includes, inter alia: information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that "all employment decisions are based on legitimate non-discriminatory reasons"; the name, address and telephone of "the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report" (interestingly, the form lists three separate units, not all of which could be the "nearest"); and all sorts of state-specific disclosures that had nothing to do with Plaintiff's potential employment in New York. All of those extraneous additions to the form stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing.

*Jones v. Halstead Management Co.*, ___ F. Supp. 3d ___, 2015 WL 366244, *5 (S.D.N.Y. Jan. 27, 2015).

35.     The background check application form that Defendant required Mr. Vazquez to sign was not the "clear and conspicuous disclosure … in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" as required by section 1681b(b)(2)(A)(i) of the FCRA.

36.     As evidenced by JetBlue's standardized attempts to prospectively obtain express or implied waivers on future liability for various actions that it might commit through the use of form employment application documents, Defendant has pursued a blanket policy and practice designed to deprive employment applicants of their legal rights, which is an objectively unreasonable action.  Such a policy is evidence of willfulness.  *Seamans v. Temple University*,

744 F.3d 853, 868 (3d Cir. 2014); *Jones v. Halstead Management Co.*, ___ F. Supp. 3d ___, 2015 WL 366244, *5-6 (S.D.N.Y. Jan. 27, 2015).

37.     Defendant knew or should have known that it could not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis supplied).

38.     According to the Merriam-Webster online dictionary, the word "solely" is defined as "without anything or anyone else involved;" and "to the exclusion of all else."  *See* http://www.merriam-webster.com/dictionary/solely.  According to dictionary.com, "solely" means "exclusively or only."  *See* http://dictionary.reference.com/browse/solely.  These dictionary definitions of the word "solely" leave no doubt that a document disclosing that an employer planned to obtain a consumer report does not "consist[] solely of the disclosure" when the document also contains many other clauses.

39.     Additionally, interpretations of the FCRA by the Federal Trade Commission ("FTC") from 1998 show that inclusion of waivers of liability in a background authorization or disclosure form violates the FCRA.  In response to company inquiries, the FTC issued two opinion letters addressing section 1681b(b)(2)'s "consists solely" language.  The first letter explicitly states that "inclusion of ... a waiver [of one's FCRA rights] in a disclosure form will violate" section 1681b(b)(2) because the form will not "consist 'solely' of the disclosure."  Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998).

40. The second opinion letter more broadly stated that the FCRA prohibits disclosure forms "encumbered by *any other information* ... [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure." Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998) (emphasis added).

41. Numerous courts interpreting the FCRA have found FTC opinion letters persuasive. *See*, *e.g.*, *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006). *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

42. Waivers of a consumer's right to sue for prospective acts are generally condemned as unenforceable and courts will hold them to be void. *See Massey v. On-Site Manager, Inc.*, 2011 WL 4356380, at *3-5 (E.D.N.Y. Sept. 16, 2011) (denied defendant's attempt to enforce waiver as to plaintiff's FCRA claim for willful conduct).

43. The FCRA statutory text, the FTC opinions and the *Massey* case constitute significant authority that existed during the time that Defendant included the improper liability waiver in its background check application form that it required employment applicants to sign.

44. The background check application form that Defendant provided to Mr. Vazquez violated section 1681b(b)(2) of the FCRA because it did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). *See Avila v. NOW Health Group, Inc.*, 2014 WL 3537825, at *2-3 (N.D. Ill. July 17, 2014); *Reardon v. Closetmaid Corp.*, 2013 WL 6231606, at *10-11 (W.D. Pa. Dec. 2, 2013) (finding

disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Milbourne v. JRK Residential Amer., LLC*, No. 12-861, 2015 WL 1120284, at *17 (E.D. Va. Mar. 11, 2015) ("As explained above, the plain language of the statute imposes two requirements: (1) that the 'clear and conspicuous disclosure' be made 'in writing,' and (2) that it be made 'in a document that consists solely of the disclosure.'").

45. In addition to signing the Disclosure Form, Plaintiff completed Air Carrier and Other Records Requests ("PRIAs") under the Pilot Records Improvement Act of 1996 authorizing JetBlue to access his pilot records from Vision Airlines and Delta Airlines Inc. DBA Comair Inc. when requested on September 4, 2014; as well as PRIA authorizing JetBlue to access his pilot records from Jet Aviators when requested on October 20, 2014.

46. Sterling never requested Plaintiff complete a PRIA request form relating to FlightPath International.

47. The PRIA request forms directed Mr. Vazquez's prior employers to submit the requested pilot records to Matt Bowden, c/o Sterling Infosystems, Inc., by fax to 866-684-9657 or by email to FAA-Records@sterlinginfosystems.com.

48. Upon information and belief, JetBlue received a background consumer report from Sterling in September 2014, with certain supplements in October 2014, concerning Mr. Vazquez which flagged four areas, including Aviation Employment Verifications for two prior employers – Jet Aviators Management and FlightPath International.

49. Sterling rates or scores portions of its background report pursuant to criteria provided by its client. The Sterling background report on Mr. Vazquez was titled "COMPLETE REPORT – CONSIDER" instead of "COMPLETE REPORT – CLEAR."

50. Sterling also provided the following comments for the flagged sections in the background report on Mr. Vazquez:

> Several messages have been left for the given company with no response to date. At the request of our client we have obtained the accompanying copy of pay stubs from the applicant for the period in question, and have incorporated the data into the verification. The attached paystubs are the best that the applicant could provide. Please note that Sterling cannot verify the authenticity of any documents presented.
>
> At the request of our client, we have obtained the accompanying professional reference letter for this period in question, and have incorporated the data into the verification. Please note, however, that Sterling cannot verify its authenticity.
>
> This request was sent 10/21/2014 and received on 10/27/2014. Processing of this verification was halted when the client cancelled the background check on the applicant, and requested that work on all incomplete verifications be suspended.

51. The Sterling background report obtained and relied upon by JetBlue was incomplete and thus misleading. Indeed, on or about October 20, 2014, Sterling directly advised Mr. Vazquez that it had "overlooked" and made an "error" in obtaining certain employment records from one of Plaintiff's prior employers.

52. On or about October 29, 2014 at approximately 8:00 p.m., Andrew Biga from JetBlue called to inform Mr. Vazquez that the "job offer was being withdrawn due to [his] background report."

53. As a result, Defendant stopped the onboarding process, and did not move forward with the job that it had offered Mr. Vazquez and which he had accepted.

54. On or about October 30, 2014, Mr. Biga emailed the denial to Mr. Vazquez confirming "We are unable to move forward with your candidacy for the position."

55. At no point prior to October 29, 2014, did Jet Blue provide Mr. Vazquez with a pre-adverse action notice or a copy of his Sterling report or a statement of FCRA rights as required by FCRA section 1681b(b)(3).

56. As a direct result of Defendant's unlawful use of the Sterling background report Mr. Vazquez lost the job opportunity at JetBlue and suffered actual damages, including wage and other pecuniary loss, humiliation, embarrassment and emotional distress.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All natural persons residing within the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the Defendant procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the Disclosure Form provided to Mr. Vazquez and described above.

58. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

59. **Numerosity**. FED. R. CIV. P. 23(a)(1). The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendant obtains signed standardized background check application forms for background reports and procures and uses hundreds if not thousands of consumer reports on applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

60. **Existence and Predominance of Common Questions of Law and Fact**. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class, and

predominate over the questions affecting only individual members. The common legal and factual questions include, among others: Whether Defendant willfully or negligently violated section 1681b(b)(2) of the FCRA by procuring or causing to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

61.     **Typicality**. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory, actual and punitive damages that he seeks for absent class members.

62.     **Adequacy**. FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class. His interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent. He has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

63.     **Predominance and Superiority**. FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory, actual and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a

potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)
### (On behalf of Plaintiff and Class)

64.  Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

65.  Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

66.  Defendant is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

67.  The Sterling background reports ordered by Defendant are "consumer reports" used for "employment purposes" within the meaning of 15 U.S.C. §§ 1681a(d) and 1681a(h).

68.  Defendant is liable for willfully and negligently violating section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

### COUNT II
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
### (On behalf of Plaintiff)

69.  Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

70. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

71. For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

72. The FCRA requires Defendant, as a user of consumer reports for employment purposes, to provide notice and certain documents to the applicant before taking adverse action based in whole or in part on the report. Those mandatory disclosures include a copy of the consumer's report and a written description of the consumer's rights under the FCRA. 15 U.S.C. §§ 1681b(b)(3)(A)(i), (ii).

73. Defendant willfully and negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff the following before taking adverse action on October 29, 2014 based in whole or in part upon the report: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of his rights under the FCRA. Defendant thereby denied Mr. Vazquez sufficient time to be able to review and dispute the report before Defendant took adverse action on his employment application.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of statutory, actual and punitive damages for Plaintiff and the Class;

C. An award of statutory, actual and punitive damages for Plaintiff individually;

D. An award of pre-judgment and post-judgment interest as provided by law;

E. An award of attorneys' fees and costs; and,

F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Dated: April 2, 2015
New City, NY

Respectfully submitted,

BY: _____
ADAM G. SINGER
**LAW OFFICE OF ADAM G. SINGER**
14 South Main Street, Suites 4 & 5
New City, NY 10956
T: 212.842.2428
F: 209.844.2428
E: asinger2@alumni.law.upenn.edu
Attorney Bar # AS7294

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS (*pro hac vice forthcoming*)
JOHN SOUMILAS (*pro hac vice forthcoming*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com

*/s/ Jonathan Shub*
Jonathan Shub
**Kohn Swift & Graf, PC**
One South Broad Street

21st floor
Philadelphia, PA 19101
T: 215. 238.1700
E: Jshub@kohnswift.com
Attorney Bar # JS8128

*Attorneys for Plaintiff*